**JAY TOWNSHIP AUTHORITY**

v.

**Robert J. CUMMINS d/b/a Bob Cummins Construction Co. and Mid–State Surety Corporation, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2001.

Decided April 24, 2001.

Reargument Denied June 27, 2001.

Gregory A. Henry, Bradford, for appellants.

Thomas G. Wagner, St. Marys, for appellee.

Before LEADBETTER, Judge, FLAHERTY, Senior Judge and MIRARCHI, Jr., Senior Judge.

LEADBETTER, Judge.

Robert Cummins (d/b/a Bob Cummins Construction Co.) and Mid–State Surety Corp. appeal from the order of the Court of Common Pleas of the 59th Judicial District (Elk County Branch), which awarded the Jay Township Authority (Authority) $10,760.00, the amount of Cummins' bid bond. The issue presented for review is whether the Authority properly awarded a project contract to Cummins thereby entitling it to the bid security when Cummins subsequently failed to execute the contract documents.

The Authority solicited bids for a sludge dewatering system for its sewage treatment plant, requiring each submission to be accompanied by a bid bond in the amount of 10% of the bid price. Cummins submitted a bid for the project in the

amount of $107,600.00, which was accompanied by the required bid security, naming Cummins as principal and Mid State as surety. Cummins' bid was opened on September 17, 1996, and it was the lowest bid received. On January 15, the Authority issued a Notice of Award to Cummins; the Notice was faxed and sent by certified mail on that same date. The facsimile transmission contained the notation that "certified copy to follow via mail." In addition, on January 15, the Authority's engineers separately mailed to Cummins for signature (via regular mail) three copies of the contract documents, including the Agreement (contract documents).

Cummins received the Notice of Award sent by mail and the contract documents within one week of January 15. Cummins did not execute the contract documents or return them to the Authority and, on January 30, he notified the Authority that he would not work on the project because of the rising cost of materials and the expiration of the period for award notification. Thereafter, on February 10, the Authority sent Cummins a Notice of Annulment for failure to execute and deliver the contract documents within 15 days of receiving the Notice of Award and further advised Cummins that it had forfeited its bid security.

In July 1997, the Authority filed its complaint against Cummins and Mid State (hereinafter Cummins), seeking payment on the bid bond. In response, Cummins averred that the Notice of Award was untimely and insufficient. Following a non-jury trial, common pleas concluded that the Notice of Award was untimely and entered an Award in favor of Cummins and against the Authority. Following post-trial motions, however, common pleas concluded that it had erred in ruling on

the timeliness issue; the court reversed its earlier award and awarded the Authority $10,760.00, the amount of the bid bond, plus interest and costs of suit.[1] The present appeal followed.

We begin by noting several basic concepts underlying the area of public contracts. First, a contractor's bid in response to an invitation constitutes an offer, and a binding contract is formed when the public entity accepts the bid. *Muncy Area Sch. Dist. v. Gardner*, 91 Pa.Cmwlth. 406, 497 A.2d 683, 686 (1985). "A public contract has its inception in the award as distinguished from the formal signing of the contract, and is binding from that time on." *Id.* Second, the prerequisites to bond forfeiture, which are included in the Instructions, form a material part of the contract between the parties. *Travelers Indem. Co. v. Susquehanna County Comm'rs*, 17 Pa.Cmwlth. 209, 331 A.2d 918, 920 (1975). Therefore, compliance with the specified prerequisites is necessary for the enforcement of rights and obligations arising thereunder. *Id.* In the present case, the Instructions provided in pertinent part:

*ARTICLE 7—BID SECURITY*

. . . .

7.2 The Bid security of Successful Bidder will be retained until such Bidder has executed the Agreement and furnished acceptable Contract bonds and insurance certificate, whereupon the Bid security will be returned. *If the Successful Bidder fails to execute and deliver the Agreement and furnish acceptable Contract bonds and insurance certificate within 15 days after the Notice of Award, Owner may annul the Notice of*

---

1. Common pleas also concluded that the Notice was properly served, and that the Authority's failure to include the contract documents with the Notice was not prejudicial to Cummins and, therefore, did not preclude forfeiture of the bid bond.

*Award and the full amount of the Bid Security of that Bidder will be forfeited.*

. . . .

*ARTICLE 17—AWARD OF CONTRACT*

. . . .

17.6. If the Contract is to be awarded, Owner will give the apparent Successful Bidder a Notice of Award within the time limits prescribed. . . .

. . . .

*ARTICLE 19—SIGNING OF AGREEMENT*

19.1 *When Owner gives a Notice of Award to the apparent Successful Bidder, it will be accompanied by the required number of unsigned counterparts of the Agreement, with all other written attachments and Bond forms.* Within fifteen days thereafter, apparent Successful Bidder shall sign and deliver the required number of counterparts of the Agreement with the required Bonds and attachments.

R.R. 322a–326a (emphasis added).

In addition to the Instructions to Bidders, the Standard General Conditions of the Construction Contract (General Conditions) governed the formation of an agreement between the parties. Article 17.1 of the General Conditions states:

Giving Notice:

17.1 Whenever any provision of the Contract Documents requires the giving of written notice, it will be deemed to have been validly given if delivered in person to the individual or to a member of the firm or to an officer of the corporation for whom it is intended, or if

delivered at or sent by registered or certified mail, postage prepaid. . . .

R.R. 479a.[2]

On appeal, Cummins argues that the Authority's failure to provide the Agreement and other contract documents with the Notice of Award as required by Section 19.1 of the Instructions precludes forfeiture of the bid bond. In conjunction with this argument, Cummins contends that the Authority's failure to send the contract documents by certified mail defeats forfeiture. The Authority contends on the other hand that Article 17 of the Instructions and not Article 19 governs the formation of a contract between the parties. According to the Authority, issuance of the Notice of Award binds the parties, not the provision of the unsigned contract documents. The Authority maintains that Article 19 merely addresses the procedural steps that are to occur after contract formation.

Here, the Authority satisfied Article 17.1 of the General Conditions by sending the Notice by certified mail. The Instructions, however, also required the Authority to provide the necessary contract documents at the same time as the Notice.

 Webster's Third New International Dictionary (1993) defines the term "accompany" as "to add or join to often incidentally or casually[;] to exist or occur in conjunction or association with." *Id.* at 12. Thus, employing the common meaning of the term "accompany" as it is used in the phrase "When Owner gives a Notice of Award . . . *it will be accompanied by* the

---

2. The Contract Documents are defined to include the General Conditions. R.R. 449a. And, the General Conditions define the "Notice of Award" as the "written notice by OWNER to the apparent successful bidder stating that upon compliance by the apparent successful bidder with the conditions precedent . . . within the time specified, OWNER will sign and deliver the Agreement." R.R. 450a. Thus, as the General Conditions provide that the Notice of the Award must be written, Article 17.1 of the General Conditions applies and governs the manner in which the Notice must be given.

required number of [contract documents]" in Section 19.1 of the Instructions, it is clear that the Authority was required to include the contract documents with the Notice of Award so that they would be received together. Accordingly, we reject the Authority's contention that Section 19.1 applies only after the Notice has been given and a contract entered into. If the contract documents do not accompany the Notice, then under the Authority's construction, the successful bidder may have less than 15 days in which to review and execute the documents.[3]

■■■ The next issue that arises, then, is whether the Authority's failure to strictly comply with its Instructions invalidates the Notice. Generally, strict compliance with bid specifications and instructions is required in order for a *bid* to be deemed valid. A violation of bid instructions will constitute legally disqualifying error.

The doctrine mandating strict adherence to bid instructions supports a crucial policy of the Commonwealth. Laws that require competitive bidding for public projects seek to apportion awards fairly and economically. Mandatory compliance with statutory procedures and bid instructions serves this goal in two ways. Initially, clear-cut ground rules for competition guarantee that none of the contractors will gain an undue advantage through better information of the bid solicitor's operation. Second, the strict adherence principle lessens the possibility of fraud and favoritism. In the opinion of the Pennsylvania judiciary, moreover, the appearance of propriety is so important that genuine deviations may not be tolerated even if all available

evidence suggests that the parties acted in good faith.

*Gaeta v. Ridley Sch. Dist.*, 757 A.2d 1011, 1014 (Pa.Cmwlth.2000), *alloc. granted,* —— Pa. ——, 766 A.2d 1251 (2001) [quoting *Hanover Area Sch. Dist. v. Sarkisian Bros., Inc.*, 514 F.Supp. 697, 703 (M.D.Pa. 1981) (citations omitted) ].

■■ Although the above principles are usually discussed in connection with the validity of a bid rather than the public entity's acceptance of the bid, it appears that strict compliance is required of the public entity as well before it is entitled to collect on the bid bond.

In *Travelers Indemnity Co. v. Susquehanna County Commissioners*, 331 A.2d at 918, this court concluded that the public entity could not recover on Rudy Construction Co.'s bid bond because it had not perfected its right to demand forfeiture of the bond. There, the bid instructions provided that the public entity's acceptance would be in writing and the contract documents must be executed by the successful bidder within 10 days after receiving written notice of acceptance. Moreover, the instructions provided that as long as the bidder had not been notified of bid acceptance, the bidder could withdraw its bid without forfeiture if withdrawal occurred within 30 days of bid opening. Although the public entity passed a resolution to award the bid to Rudy Construction in the presence of a Rudy employee, Rudy was not given written notice of the acceptance of its bid. Thereafter, realizing that its bid was based upon a miscalculation, Rudy requested to be released from its bid obligations without forfeiting its security. The public entity awarded the project to

---

**3.** As with contracts, we construe any ambiguity in the Instructions against the Authority as drafter of the document. *See generally Sun Co., Inc. v. Pennsylvania Turnpike Comm'n,* 708 A.2d 875, 878–79 (Pa.Cmwlth.1998) ("[A]mbiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable.").

the next lowest bidder and then sought to collect on Rudy's bond. We concluded that the conditions for forfeiture had not ripened as Rudy did not actually withdraw its bid and the public entity failed to give written notice of its acceptance and provide the contract documents for execution. *Id.* at 920. We also noted that although the public entity's resolution to award the bid to Rudy may have constituted an acceptance, it was insufficient notice under the terms of the contract. *Id.*

Similarly, in *Hanover Area School District v. Sarkisian Brothers, Inc.*, 514 F.Supp. 697 (M.D.Pa.1981), the federal court, relying heavily on *Susquehanna,* held that the public entity's failure to provide the lowest bidder with all the documents necessary to finalize the transaction as required by the bid instructions, precluded it from recovering on the bid bond.[4]

Both *Susquehanna* and *Sarkisian Brothers* demonstrate that the public entity must strictly comply with its bid instructions regarding the procedure for bid acceptance in order to perfect its right to collect upon the bid bond. In the instant case, the Instructions required the Authority to provide the contract documents along with the Notice of Award. The Au-

thority's failure to comply with this provision amounted to more than a superficial deviation. Rather, the Authority failed to timely provide Cummins with all the documents necessary to complete the transaction. Whether this failure was the basis for Cummins' failure to execute the Agreement is irrelevant. The critical fact is that the Authority failed to follow the procedure for giving valid notice of the award. Accordingly, we conclude that that failure invalidated the Notice of Award. As a result, the Authority was not entitled to forfeiture of the bid bond.[5]

Based upon the foregoing, common pleas' order is reversed.

### ORDER

AND NOW, this 24th day of April, 2001, the order of the Court of Common Pleas of the 59th Judicial District (Elk County Branch) in the above-captioned action is REVERSED.

---

**4.** The bid instructions required the public entity to send the successful bidder a letter which would: (1) be sent by mail; (2) award the contract subject to the bidder obtaining the requisite performance bonds; and (3) "contain instructions and enclosures for the proper execution of the contract documents, bonds and insurance." *Hanover Area Sch.*

*Dist. v. Sarkisian Bros., Inc.,* 514 F.Supp. 697, 701 (M.D.Pa.1981) (citation to record omitted).

**5.** As a result of this conclusion, it is unnecessary for the court to address the remainder of the arguments raised on appeal.